1  MARGARET A. MCLETCHIE, Nevada Bar No. 10931
2  **MCLETCHIE LAW**
   701 East Bridger Ave., Suite 520
3  Las Vegas, Nevada 89101
   Telephone: (702) 728-5300; Fax: (702) 425-8220
4  Email: maggie@nvlitigation.com
   *Attorney for Plaintiff Dr. Martin Sunday Uwah*
5

6                **UNITED STATES DISTRICT COURT**
                    **DISTRICT OF NEVADA**
7

8  MARTIN SUNDAY UWAH, an individual,    **Case. No.: 2:20-cv-1773**

9                  Plaintiff,
          vs.
10

11 LAS VEGAS METROPOLITAN POLICE          **COMPLAINT**
   DEPARTMENT; JOSEPH LOMBARDO,
12 individually and in his official capacity as   **[JURY TRIAL DEMANDED]**
   Sheriff; KEVIN MENON, individually and
13 in his capacity as a Las Vegas Metropolitan
   Police Department Officer; RICARDO
14 LOPEZ, individually and in his capacity as a
   Las Vegas Metropolitan Police Department
15 Officer; DOE OFFICERS I - III, individually
   and in their capacities as Las Vegas
16 Metropolitan Police Department Officers,
17
                 Defendants.
18
19

20        Plaintiff MARTIN SUNDAY UWAH, an individual, files this Complaint for

21 damages and declaratory relief pursuant to 42 U.S.C. § 1983 (civil action for deprivation of

22 rights), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 2201 (creation of

23 remedy), and 28 U.S.C § 1367 (supplemental jurisdiction), and hereby alleges and complains

24 as follows:

25                    **I.  NATURE OF THE ACTION**

26        On September 24, 2018, Plaintiff MARTIN SUNDAY UWAH and his wife—

27 visitors to Las Vegas—were driving back to their hotel from dinner. Unbeknownst to DR.

28 UWAH, their route passed through a "high crime area" patrolled by the Las Vegas

                              1

1 Metropolitan Police Department's ("Metro") "gang unit." Even though DR. UWAH
2 committed no traffic offense, Metro officers executed a traffic stop on DR. UWAH. When
3 DR. UWAH—an African-American man—initially questioned the rationale for this stop and
4 refused to exit his vehicle for his own safety, Metro officers (including Defendant KEVIN
5 MENON) demonstrated that his fears were well-founded. They violently detained DR.
6 UWAH—who posed no objective threat—by grabbing him, slamming him into the hood of
7 a police vehicle, choking him, and handcuffing him. Taunting DR. UWAH for daring to
8 question why he had been stopped and brutalized, Metro officers then subjected DR. UWAH
9 to painful and unjustified searches. Eventually, DR. UWAH was arrested and transported to
10 jail, where he was held overnight.

11        DR. UWAH is entitled to damages, costs, and attorney's fees, punitive damages,
12 and any other relief as a victim of civil rights violations and of tort damages.

13                                **II.  JURISDICTION AND VENUE**

14        1.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 *et seq.* for civil
15 claims arising under the Constitution and laws of the United States. Pursuant to § 1331, this
16 Court has original subject matter jurisdiction over DR. UWAH's claims brought under 42
17 U.S.C. § 1983.

18        2.      Jurisdiction is conferred on this Court by 28 U.S.C § 1367 for civil claims
19 arising under the Constitution and laws of the State of Nevada. Pursuant to § 1367, this Court
20 has supplemental jurisdiction over DR. UWAH's state law claims.

21        3.      The prayer for relief is predicated on 28 U.S.C. § 2201 and Fed. R. Civ. P.
22 38. This Court has jurisdiction to award DR. UWAH's damages pursuant to 42 U.S.C. §
23 1983. Authorization for the request of attorneys' fees and costs is conferred by 42 U.S.C. §
24 1988(b).

25        4.      The Defendants acted, purported to act, and/or pretended to act in the
26 performance of their official duties, and thus each of the Defendants acted under color of law
27 and are subject to liability as state actors pursuant to 42 U.S.C. § 1983. *See McDade v. West*,
28 223 F.3d 1135, 1140 (9th Cir. 2000).

5.      Because the individual Defendants are not arms of the State, this suit is not barred by the Eleventh Amendment to the U.S. Constitution.  *See Eason v. Clark County School*, 303 F.3d 1137, 1147 (9th Cir. 2002); *Culinary Workers Union v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999).

6.      The acts or omissions giving rise to DR. UWAH's claims all occurred in Clark County, Nevada and all Defendants reside or operate in Clark County, Nevada.  Thus, pursuant to 28 U.S.C.A. § 1391(b)(2) and 28 U.S.C.A. § 1391(c), venue is proper in the United States District Court for the District of Nevada.

### III. PARTIES

7.      Plaintiff MARTIN SUNDAY UWAH is a resident of Orange County, Florida, where he works as a resident physician in general surgery.

8.      Previously, DR. UWAH worked in Houston, Texas as a resident physician in general surgery.

9.      Defendant LAS VEGAS METROPOLITAN POLICE DEPARTMENT ("Metro") is a law enforcement agency with jurisdiction over the unincorporated parts of Clark County in which the events at issue took place.

10.      Defendant JOSEPH LOMBARDO ("SHERIFF LOMBARDO") is the Sheriff of Metro, and was the Sheriff of Metro at all relevant times herein. SHERIFF LOMBARDO and all Metro police officers are vested with the authority to enforce both Nevada statutory law and the Clark County Code. SHERIFF LOMBARDO has final policymaking authority for Metro internal policies and is vested with supervisory authority over all Metro officers.

11.      On information and belief, SHERIFF LOMBARDO is aware of, and has either explicitly or implicitly condoned or created a policy and practice of deliberate indifference toward the constitutional rights of motorists driving in "high crime areas."

/ / /

/ / /

/ / /

12.     On information and belief, SHERIFF LOMBARDO has failed to implement policies safeguarding motorists' constitutional rights and has failed to adequately train his officers to protect motorists from being subjected to brutalization when attempting to comply with officers' commands.

13.     On information and belief, SHERIFF LOMBARDO is aware of, and has either explicitly or implicitly condoned or created a policy and practice of encouraging, validating, and enforcing the policy of pretextual stops and violent detainment by "gang units" in "high-crime" areas.

14.     On information and belief, Defendant KEVIN MENON ("OFFICER MENON") was a Metro officer at all relevant times herein.

15.     On information and belief, Defendant RICARDO LOPEZ ("OFFICER LOPEZ") was a Metro officer at all relevant times herein.

16.     Defendants DOE OFFICERS I – III are individuals whose true identities are unknown to Plaintiff and are therefore sued under fictitious names. On information and belief, these individuals were employed by and acting on the behalf of Metro at all relevant times herein.

17.     Defendants OFFICER MENON, OFFICER LOPEZ, and DOE OFFICERS I – III may be collectively referred to herein as the "Officer Defendants."

18.     The naming of defendants herein is based upon information and belief. DR. UWAH reserves his right to name additional defendants and modify his allegations concerning defendants named herein.

**IV.  STANDING**

19.     DR. UWAH was directly affected by Defendants' practices and policies of violating his constitutional rights, as set forth more fully herein, and/or other abuses by Defendants operating under color of law as alleged herein.

20.     An actual case and controversy exist between DR. UWAH and Defendants concerning their respective rights, privileges, and obligations.

/ / /

**V.  FACTUAL ALLEGATIONS**

21.     An actual case and controversy exist between DR. UWAH and Defendants concerning their respective rights, privileges, and obligations.

***Metro's History of Constitutional Violations***

22.     On information and belief, Metro has a history of deliberate indifference toward the rights of those in Las Vegas to be free of unreasonable searches, seizures and false arrests performed without probable cause; to be free from the use of excessive force; to be free from retaliation for engaging in protected speech; and, to be free from discriminatory application of the laws based on race.

23.     In 2011, Metro entered into cooperative agreement number 2011-CK-WX-K002, pursuant to which the United States Department of Justice Office of Community Oriented Policing Services commissioned a report which suggested Metro make 80 different recommendations or reforms, many of which were related to use of force.[1]

24.     In 2012, a Metro officer resigned from the force after abusing his authority to pull over female motorists and coerce them into exposing their breasts.[2]

25.     In 2012, Metro settled a case for $100,000 in which a Metro officer—who had previously been involved in two officer-involved shootings—beat and arrested a videographer for refusing to obey his unlawful demands to stop recording police in public.[3]

26.     In 2016, Metro settled a case for $200,000 in which a Metro officer used excessive force in detaining an unarmed woman whom he suspected—but had no probable cause to believe—was engaged in prostitution.[4]

/ / /

---

[1] *See* https://cops.usdoj.gov/RIC/Publications/cops-p287-pub.pdf (last accessed September 22, 2020).

[2] *See* https://www.reviewjournal.com/crime/courts/las-vegas-officer-investigated-in-motorist-stops-resigns/ (last accessed September 23, 2020).

[3] *See* https://www.reviewjournal.com/crime/courts/las-vegas-police-agree-to-pay-100000-to-beaten-videographer/ (last accessed September 23, 2020).

[4] *See* https://www.ktnv.com/news/200000-settlement-approved-in-lvmpd-excessive-force-case (last accessed September 22, 2020).

27.     According to Metro's Office of Internal Oversight Use of Force Statistical Analysis 2012-2016, in 2016, black subjects were overrepresented and white subjects were underrepresented in officer involved shootings in a way that was "not consistent with the racial demographics of Clark County, Nevada."[5]

28.     In the context of the Las Vegas Strip, Metro so routinely violated the rights of street performers by, *inter alia*, citing them without probable cause, that Metro and its officers were party to several lawsuits regarding infringement constitutional rights. For example, on July 9, 2009, two street performers filed suit in federal court alleging constitutional violations after Metro officers cited them for storing materials or obstructing the sidewalks on the Las Vegas Strip. See *Banasik et al. v. Clark County et al.*, U.S. Dist. Ct. Case No. 2:09-cv-01242-LDGGWF. This matter was resolved pursuant to a settlement agreement between the parties.

29.     In *Santopietro v. Howell*, 857 F.3d 980 (9th Cir. 2017), the Ninth Circuit again addressed Metro's unconstitutional actions. In that case, Metro officers cited a street performer for conducting a business without a license—in violation of his First Amendment rights—despite not having any probable cause to do so.

### The Unlawful Stop

30.     On or about September 24, 2018, DR. UWAH and his wife were visiting Las Vegas as tourists.

31.     After obtaining a movie from a Redbox in an area of unincorporated Clark County slightly north of the University of Nevada, Las Vegas campus, DR. UWAH attempted to drive himself and his wife back to the hotel they were staying at.

32.     Upon information and belief, the area in which DR. UWAH was driving has been designated by Metro as a "high crime" area.

---

[5] *See* https://www.lvmpd.com/en-us/InternalOversightConstitutionalPolicing/Documents/Use%20of%20Force%20Statistical%20Analysis%202012-2016%20-%20051117.pdf at p. 14 (last accessed September 22, 2020).

33.     Upon information and belief, the majority of residents in this area are non-white.

34.     DR. UWAH is an African-American man.

35.     At or about 9:00 PM, DR. UWAH turned his vehicle right from a parking lot onto the same street that was occupied by Defendants OFFICER MENON and OFFICER LOPEZ.

36.     DR. UWAH's phone's GPS navigation system informed him that he was heading in the wrong direction, and instructed him to make a U-turn toward the hotel.

37.     Out of an abundance of caution—and having noticed the presence of Defendants' police vehicle on the road—DR. UWAH decided to turn left into a different parking lot instead of making a potentially illegal U-turn.

38.     Furthermore, DR. UWAH intended to park his car so that he could re-read the directions to the hotel on his phone without violating the law.

39.     As DR. UWAH turned left into the parking lot, OFFICER MENON turned on his vehicle's police sirens and signaled for DR. UWAH to park his car.

40.     DR. UWAH complied and parked his car in the parking lot, and OFFICER MENON parked the police vehicle behind DR. UWAH's car.

41.     DR. UWAH used his turn signals properly at all points of this encounter.

***Officer Menon Demands Dr. Uwah Exit His Vehicle***

42.     After DR. UWAH parked his car, OFFICER MENON approached the car.

43.     OFFICER MENON asked DR. UWAH to roll down his windows and DR. UWAH complied.

44.     OFFICER MENON then asked DR. UWAH to step out of his car.

45.     DR. UWAH asked OFFICER MENON what he was being stopped for and did not exit his car.

46.     Instead of simply explaining the alleged basis for the traffic stop, OFFICER MENON again demanded that DR. UWAH exit his car.

47.     DR. UWAH again did not exit his car.

7

48.     OFFICER MENON demanded DR. UWAH keep his hands where he could see them and then repeatedly demanded DR. UWAH exit his car. DR. UWAH kept his hands visible but did not exit the car.

49.     At or about the same time, DR. UWAH's wife asked OFFICER MENON's partner, OFFICER LOPEZ, through the passenger-side window what they were being pulled over for.

50.     OFFICER LOPEZ refused to answer this straightforward question, instead saying, "we'll let him know when he steps out."

51.     Fearing that the officers would harm them, DR. UWAH's wife emphasized that her husband was not armed, saying, "his phone is in his hands and his wallet is in his hands. I just don't want you to think it's something else."

52.     In the interim, several more police vehicles arrived on scene.

53.     OFFICER MENON finally threatened to physically pull DR. UWAH out of the car if he did not exit.

54.     In response to this threat, DR. UWAH exited his car.

***Officers Use Excessive and Unnecessary Force on Dr. Uwah***

55.     OFFICER MENON demanded that DR. UWAH step up to the front of the police vehicle, parked behind DR. UWAH's vehicle.

56.     As DR. UWAH—who was clearly unarmed and posed no physical threat to OFFICER MENON or any of the Metro officers now on scene—attempted to comply, OFFICER MENON grabbed DR. UWAH's arm, twisting it behind DR. UWAH's back, slammed DR. UWAH face-first onto the hood of the police vehicle, and placed handcuffs on DR. UWAH.

57.     OFFICER MENON also placed DR. UWAH in a chokehold.

58.     DR. UWAH protested that it felt like OFFICER MENON was going to break his arm.

59.     In response to the aggressive and dehumanizing manner in which he was being treated, DR. UWAH asked, "do you feel tough now?"

60.   DR. UWAH repeatedly asked why he was being arrested.

61.   Instead of providing a reason, OFFICER MENON demanded that DR. UWAH separate his feet.

62.   OFFICER MENON demanded that DR. UWAH separate his feet to a painful degree, to the point that DR. UWAH remarked, "I'm doing the splits."

63.   DOE OFFICERS I – III participated in the detention and search of DR. UWAH by physically restraining DR. UWAH and forcing him to spread his legs during the search.

64.   The search of DR. UWAH and DR. UWAH's car revealed no weapons or contraband. Further, DR. UWAH had no warrants.

65.   Despite being subjected to painful and humiliating detention, DR. UWAH still attempted to de-escalate the situation by referring to OFFICER MENON as "my G," a Texas colloquialism that means "my guy."

66.   When DR. UWAH informed Officer Defendants that he was a physician, they reacted with visible and audible incredulity and taunting.

***Dr. Uwah Is Arrested and Transported to Jail***

67.   DR. UWAH was detained in a parked police vehicle while Metro officers deliberated over whether to take him to jail.

68.   While being detained, DR. UWAH engaged in a conversation with a female Metro officer who had arrived on the scene.

69.   The officer told DR. UWAH that, "In Nevada, we can get you out of the car for whatever reason."

70.   The officer continued, "the next thing is, you are in a super high crime area, okay? So failure to use your turn signal might sound petty, but in a gang unit, we're gonna do some stuff different, you know what I'm saying? Not saying that you're part of a gang or anything like that, but we're down here for a reason."

71.   DR. UWAH explained his reasonable apprehension of police to the officer, "you know how the climate is, where people think they're getting killed for nothing."

72.     The officer responded, despite having earlier admitted that she was not present for the initial traffic stop, "I don't. You got stopped for a probable cause crime, and you weren't complying to their requests, and that's how you ended up in handcuffs, bro."

73.     DR. UWAH explained that when he gets pulled over, he is "already on alert" and felt that Defendant OFFICER MENON was "trying to find a reason to get me."

74.     DR. UWAH also noted that officers kept telling him to relax, but that "it's hard to be relaxed when there's four dudes trying to slam you on the car."

75.     DR. UWAH was arrested for failure to signal.

76.     DR. UWAH was transported to Clark County Detention Center (CCDC) where he was booked into jail.

77.     DR. UWAH was not informed of the charge of obstruction until after he was booked into CCDC.

78.     While in CCDC, jail employees did not allow DR. UWAH to take his prescribed blood-thinning medication, placing DR. UWAH in reasonable fear for his physical health.

79.     While in CCDC, DR. UWAH recounted the story of his arrest and detention to a CCDC employee, who commented that he should sue because his arrest sounded illegal.

80.     On or about September 25, 2018, DR. UWAH was released on his own recognizance.

81.     On October 25, 2018, the District Attorney denied the charges of obstruction and failure to signal against DR. UWAH.

**_Damages Sustained by Dr. Uwah_**

82.     DR. UWAH suffered lasting physical pain as a result of this incident.

83.     DR. UWAH suffered severe emotional distress and mental anguish as a result of this incident.

84.     Additionally, public records of DR. UWAH's unlawful arrest cause DR. UWAH professional and economic harm as they jeopardize fellowship opportunities, hospital appointments, and even his ability to maintain a medical license.

85.     It has been necessary for DR. UWAH to retain the services of attorneys to pursue this matter, and DR. UWAH is entitled to attorney's fees, costs, and prejudgment interest.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
### TO THE CONSTITUTION OF THE UNITED STATES
### PURSUANT TO 42 U.S.C. § 1983
### (RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES)
### (AGAINST DEFENDANTS OFFICER MENON AND OFFICER LOPEZ)

86.     DR. UWAH repeats and re-alleges Paragraphs 1 through 85 as though fully set forth herein.

87.     Defendants violated DR. UWAH's right be free from unreasonable searches and seizures by performing a traffic stop on him despite lacking probable cause to do so.

88.     The fact that OFFICER MENON and OFFICER LOPEZ were incapable of informing DR. UWAH or his wife of the reason for the traffic stop until after they had battered and arrested DR. UWAH raises the inference that neither of them actually observed DR. UWAH breaking any traffic laws, and therefore did not have probable cause to stop DR. UWAH.

89.     DR. UWAH's right to be free from unreasonable searches and seizures was, or should have been, known to Defendants.

90.     As a direct and proximate result of Defendants' violations of the Fourth and Fourteenth Amendments, DR. UWAH has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and DR. UWAH is entitled to: declaratory relief against Defendants, as well as compensatory and punitive damages from Defendants.

/ / /

/ / /

/ / /

/ / /

/ / /

11

### SECOND CAUSE OF ACTION
#### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
#### TO THE CONSTITUTION OF THE UNITED STATES
#### PURSUANT TO 42 U.S.C. § 1983
#### (RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES)
#### (AGAINST DEFENDANTS METRO AND SHERIFF LOMBARDO)

91.     DR. UWAH repeats and re-alleges Paragraphs 1 through 90 as though fully set forth herein.

92.     Upon information and belief, Defendant Metro has a widespread, well-settled custom of pulling over motorists despite a lack of probable cause, then subsequently inventing a traffic violation to justify the stop *post hoc*.

93.     The failure of Defendant Metro and Sheriff Lombardo to provide adequate training and supervision regarding the lawful bases for traffic stops amounts to deliberate indifference to the safety and constitutional rights of individuals such as DR. UWAH.

94.     Defendants Metro and Sheriff Lombardo are liable for their employees' actions because at all relevant times they were responsible for making and enforcing constitutional policies with respect to officer interactions with citizens including lawful bases for performing traffic stops.

95.     As a direct and proximate result of Defendants' deliberate indifference to his constitutional right to be free from unlawful searches and seizures, DR. UWAH has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and DR. UWAH is entitled to: declaratory relief against Defendants, as well as compensatory and punitive damages from Defendants.

### THIRD CAUSE OF ACTION
#### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
#### TO THE CONSTITUTION OF THE UNITED STATES
#### PURSUANT TO 42 U.S.C. § 1983
#### (FALSE ARREST)
#### (AGAINST DEFENDANTS OFFICER MENON AND OFFICER LOPEZ)

96.     DR. UWAH repeats and re-alleges Paragraphs 1 through 95 as though fully set forth herein.

/ / /

97.     Defendants violated DR. UWAH's right be free from false arrests by arresting him for failure to use his traffic signal and for obstruction despite lacking probable cause to make such arrests.

98.     DR. UWAH's right to be free from arrest in the absence of probable cause was, or should have been, known to Defendants.

99.     As a direct and proximate result of Defendants' violations of the Fourth and Fourteenth Amendments, DR. UWAH has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and DR. UWAH is entitled to: declaratory relief against Defendants, as well as compensatory and punitive damages from Defendants.

**FOURTH CAUSE OF ACTION**
VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(FALSE ARREST)
(AGAINST DEFENDANTS METRO AND SHERIFF LOMBARDO)

100.    DR. UWAH repeats and re-alleges Paragraphs 1 through 99 as though fully set forth herein.

101.    Upon information and belief, Defendant Metro has a widespread, well-settled custom of pulling over motorists despite a lack of probable cause, then subsequently inventing a traffic violation or false claims of obstruction to justify the arrest.

102.    The failure of Defendant Metro and Sheriff Lombardo to provide adequate training and supervision regarding the lawful bases for arrests amounts to deliberate indifference to the safety and constitutional rights of individuals such as DR. UWAH.

103.    Defendants Metro and Sheriff Lombardo are liable for their employees' actions because at all relevant times they were responsible for making and enforcing constitutional policies with respect to officer interactions with citizens including lawful bases for performing arrests.

104.    As a direct and proximate result of Defendants' deliberate indifference to his constitutional right to be free from false arrest, DR. UWAH has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and DR. UWAH is entitled

to: declaratory relief against Defendants, as well as compensatory and punitive damages from Defendants.

### FIFTH CAUSE OF ACTION
#### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
#### TO THE CONSTITUTION OF THE UNITED STATES
#### PURSUANT TO 42 U.S.C. § 1983
#### (RIGHT TO BE FREE FROM EXCESSIVE FORCE)
#### (AGAINST DEFENDANTS OFFICER MENON, OFFICER LOPEZ, AND DOE OFFICERS I-III)

105.    DR. UWAH repeats and re-alleges Paragraphs 1 through 104 as though fully set forth herein.

106.    Defendants violated DR. UWAH's right to be free from the use of excessive force as guaranteed by the Fourth and Fourteenth Amendments of the U.S. Constitution by using more force than was reasonably necessary to detain and search DR. UWAH; specifically by battering him, hyperextending his arms and legs, and placing him in a chokehold.

107.    Defendants further violated DR. UWAH's right to be free from the use of excessive force by using force disproportionate to the nonexistent threat posed by DR. UWAH.

108.    Defendants' use of force was objectively unreasonable based on the totality of the circumstances.

109.    DR. UWAH's right to be free from such excessive force was, or should have been, known to the Officer Defendants.

110.    As a direct and proximate result of Defendants' violations of the Fourth and Fourteenth Amendments, DR. UWAH has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and DR. UWAH is entitled to: declaratory relief against Defendants, as well as compensatory and punitive damages from Defendants.

/ / /

/ / /

/ / /

/ / /

### SIXTH CAUSE OF ACTION
#### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
#### TO THE CONSTITUTION OF THE UNITED STATES
#### PURSUANT TO 42 U.S.C. § 1983
#### (RIGHT TO BE FREE FROM EXCESSIVE FORCE)
#### (AGAINST DEFENDANTS METRO AND SHERIFF LOMBARDO)

111.    DR. UWAH repeats and re-alleges Paragraphs 1 through 110 as though fully set forth herein.

112.    Upon information and belief, Defendant Metro has a widespread, well-settled custom of using excessive force when detaining motorists in designated "high crime" areas regardless of whether the officer has reasonable suspicion of a dangerous crime or whether the motorist poses an actual threat to the officers' safety.

113.    The failure of Defendant Metro and Sheriff Lombardo to provide adequate training and supervision regarding the lawful use of force against unarmed individuals—whether or not they are stopped in a "high crime" area—amounts to deliberate indifference to the safety and constitutional rights of individuals such as DR. UWAH.

114.    Defendants Metro and Sheriff Lombardo are liable for their employees' actions because at all relevant times they were responsible for making and enforcing constitutional policies with respect to officer interactions with citizens including appropriate uses of force during traffic stops, as evidenced by the pattern of Metro officers being subject to lawsuits and federal action with regard to use of excessive force.

115.    As a direct and proximate result of Defendants' deliberate indifference to his constitutional right to be free from the use of excessive force, DR. UWAH has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and DR. UWAH is entitled to: declaratory relief against Defendants, as well as compensatory and punitive damages from Defendants.

/ / /

/ / /

/ / /

15

**SEVENTH CAUSE OF ACTION**
VIOLATION OF THE FOURTEENTH AMENDMENT
TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(EQUAL PROTECTION)
(AGAINST DEFENDANT OFFICER MENON)

116.    DR. UWAH repeats and re-alleges Paragraphs 1 through 115 as though fully set forth herein.

117.    Defendant violated DR. UWAH's right to equal protection of the law by subjecting him to unlawful search, seizure, false arrest and excessive force based on his race.

118.    DR. UWAH's right to equal protection of the law was, or should have been, known to Defendant.

119.    As a direct and proximate result of Defendant's violations of the Fourteenth Amendments, DR. UWAH has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and DR. UWAH is entitled to: declaratory relief against Defendants, as well as compensatory and punitive damages from Defendant.

**EIGHTH CAUSE OF ACTION**
VIOLATION OF THE FOURTEENTH AMENDMENT
TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(EQUAL PROTECTION)
(AGAINST DEFENDANTS METRO AND SHERIFF LOMBARDO)

120.    DR. UWAH repeats and re-alleges Paragraphs 1 through119 as though fully set forth herein.

121.    Upon information and belief, Defendant Metro has a widespread, well-settled custom of subjecting African-American individuals to disparate treatment, including violations of their constitutional rights, based on their race.

122.    Upon information and belief, Defendant Metro has a widespread, well-settled custom of allowing its "gang units" to subject African-American individuals to disparate treatment, including violations of their constitutional rights, based on their race.

/ / /

/ / /

16

123.    Upon information and belief, Defendant Metro has a widespread, well-settled custom of allowing its officers to subject African-American individuals to disparate treatment, including violations of their constitutional rights, based on their race, during encounters that occur in "high crime areas."

124.    The failure of Defendant Metro and Sheriff Lombardo to provide adequate training and supervision regarding equal application of the law to all citizens regardless of race amounts to deliberate indifference to the safety and constitutional rights of individuals such as DR. UWAH.

125.    Defendants Metro and Sheriff Lombardo are liable for their employees' actions because at all relevant times they were responsible for making and enforcing constitutional policies with respect to Metro officer interactions with citizens and ensuring that officers uniformly enforce laws and do not discriminate against citizens based on their race.

126.    As a direct and proximate result of Defendants' deliberate indifference to his constitutional right to equal protection of the law, DR. UWAH has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and DR. UWAH is entitled to: declaratory relief against Defendants, as well as compensatory and punitive damages from Defendants.

**NINTH CAUSE OF ACTION**
**VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS**
**TO THE CONSTITUTION OF THE UNITED STATES**
**PURSUANT TO 42 U.S.C. § 1983**
**(RETALIATION FOR PROTECTED SPEECH)**
**(AGAINST DEFENDANT OFFICER MENON)**

127.    DR. UWAH repeats and re-alleges Paragraphs 1 through 126 as though fully set forth herein.

128.    Defendant violated DR. UWAH's right to be free from retaliation for engaging in protected speech under the First and Fourteenth Amendments of the U.S. Constitution by detaining and arresting DR. UWAH for engaging in protected speech—simply asking the reason for why he was arrested, expressing his well-founded fears of (and

frustrations with) being subjected to police violence.

129.    Defendant further violated DR. UWAH's right to be free from retaliation for engaging in protected speech by arresting DR. UWAH despite having no probable cause to do so.

130.    But for Defendant's retaliatory animus, DR. UWAH would not have been subjected to arrest for allegedly failing to use his turn signal, nor would DR. UWAH have been subjected to arrest for alleged obstruction.

131.    Alternatively, even if probable cause existed to cite DR. UWAH for a traffic violation, a similarly-situated individual being stopped for such an offense would not have been arrested but for engaging in protected speech as DR. UWAH did.

132.    DR. UWAH's right to be free from retaliation for engaging in protected speech was, or should have been, known to Defendant.

133.    As a direct and proximate result of Defendant's violations of the Fourth and Fourteenth Amendments, DR. UWAH has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and DR. UWAH is entitled to: declaratory relief against Defendants, as well as compensatory and punitive damages from Defendants.

**TENTH CAUSE OF ACTION**
VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(RETALIATION FOR PROTECTED SPEECH)
(AGAINST DEFENDANTS METRO AND SHERIFF LOMBARDO)

134.    DR. UWAH repeats and re-alleges Paragraphs 1 through 133 as though fully set forth herein.

135.    Upon information and belief, Defendant Metro has a widespread, well-settled custom of subjecting individuals to retaliatory arrest and citation for engaging in protected speech.

136.    The failure of Defendant Metro and Sheriff Lombardo to provide adequate training and supervision regarding the constitutional prohibition on retaliatory arrest and citation for engaging in protected speech amounts to deliberate indifference to the safety and

1 | constitutional rights of individuals such as DR. UWAH.

2 |      137.    Defendants Metro and Sheriff Lombardo are liable for their employees'
3 | actions because at all relevant times they were responsible for making and enforcing
4 | constitutional policies with respect to Metro officer interactions with citizens and ensuring
5 | that officers do not perform retaliatory arrests for engaging in protected speech.

6 |      138.    As a direct and proximate result of Defendants' deliberate indifference to
7 | his constitutional right to be free of retaliation for his speech, DR. UWAH has suffered, is
8 | suffering, and will continue to suffer damages in an amount subject to proof, and DR. UWAH
9 | is entitled to: declaratory relief against Defendants, as well as compensatory and punitive
10 | damages from Defendants..

**ELEVENTH CAUSE OF ACTION**
NEGLIGENT TRAINING, SUPERVISION AND RETENTION
PURSUANT TO NEV. REV. STAT. § 41.130
(AGAINST DEFENDANT METRO)

14 |      139.    DR. UWAH repeats and re-alleges Paragraphs 1 through 138 as though
15 | fully set forth herein.

16 |      140.    Defendant Metro owes a duty to persons such as DR. UWAH to use
17 | reasonable care in the training, supervision, and retention of their employees to make sure
18 | that their employees are fit for their positions by implementing policies and procedures
19 | designed to prevent wrongful acts by their employees, such as those committed by
20 | Defendants OFFICER MENON, OFFICER LOPEZ, AND DOE OFFICERS I – III.

21 |      141.    Defendant Metro breached this duty by failing to train its officers regarding
22 | the constitutional rights of motorists.

23 |      142.    Defendant Metro is liable because at all relevant times, the officers were in
24 | the employ of Metro and Metro is responsible for Metro's officers' conduct. Defendant
25 | Metro's officers were not acting independently, committed the wrongful acts during the
26 | course of their official duties as police officers, and such actions were reasonably foreseeable
27 | considering the nature and scope of their employment as police officers.

28 | / / /

143.   As a direct and proximate result of Defendants' failure to train its employees, DR. UWAH has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and DR. UWAH is entitled to: declaratory relief against Defendants; attorney's fees and costs from Defendants, and monetary, compensatory, and punitive damages from Defendants.

### TWELFTH CAUSE OF ACTION
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
PURSUANT TO NEV. REV. STAT. § 41.130
(AGAINST DEFENDANT OFFICER MENON)

144.   DR. UWAH repeats and re-alleges Paragraphs 1 through 143 as though fully set forth herein.

145.   OFFICER MENON intentionally caused DR. UWAH to suffer severe emotional distress, as evidenced by his outrageous and unreasonable conduct of physical battering and assaulting DR. UWAH and mocking him.

146.   As a direct and proximate result of Defendant's intentional infliction of emotional distress, DR. UWAH has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and DR. UWAH is entitled to: declaratory relief against Defendants; attorney's fees and costs from Defendants, and monetary, compensatory, and punitive damages from Defendants.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## VII.  PRAYER FOR RELIEF

WHEREFORE, DR. UWAH respectfully prays as follows:

a.      A declaration that Defendant METRO's and Defendant SHERIFF LOMBARDO's failures to make or enforce policies and practices with respect to preventing the wrongful citation, detention, and arrest of motorists violated DR. UWAH's constitutional rights;

b.      Compensatory and punitive damages to be determined at trial;

c.      An award of attorney's fees and expenses under 42 U.S.C. § 1988(b);

d.      For a jury trial on all issues; and,

e.      Any further relief the Court deems appropriate.


RESPECTFULLY SUBMITTED this 23rd day of September, 2020.


*/s/ Margaret A. McLetchie*
MARGARET A. MCLETCHIE, Nevada Bar No. 10931
**MCLETCHIE LAW**
701 East Bridger Ave., Suite 520
Las Vegas, Nevada 89101
Telephone: (702) 728-5300; Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Attorney for Plaintiff Dr. Martin Sunday Uwah*