UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARTIN SUNDAY UWAH, | Case No. 2:20-CV-1773 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al., | |
| Defendant(s). | |

Presently before the court are defendants Las Vegas Metropolitan Police Department ("LVMPD"), Sheriff Joseph Lombardo, Officer Kevin Menon, and Officer Ricardo Lopez's (collectively "defendants") motion for partial dismissal. (ECF No. 6). Plaintiff Martin Sunday Uwah responded in opposition (ECF No. 10) to which defendants replied (ECF No. 13).

I. **BACKGROUND**

Las Vegas visitors Dr. Uwah and his wife were driving from dinner to their hotel in a high crime area just north of the UNLV campus. (Compl., ECF No. 1 ¶ 30). Uwah's GPS instructed him to make a U-turn on a street where Officers Menon and Lopez were stationed. (*Id.* ¶¶ 32, 36, 38). After spotting the officers' police car, Uwah allegedly signaled and turned into a parking lot to avoid making a U-turn and to reassess the directions to the hotel. (*Id.* ¶¶ 37–41).

The officers followed Uwah's car into the parking lot. (*Id.* ¶¶ 39–40). Officer Menon approached Uwah's car, asked him to roll down the window, and then asked him to step out of the car. (*Id.* ¶¶ 42–47). Uwah refused to do so and asked Officer Menon why he was

**James C. Mahan**
**U.S. District Judge**

being stopped. (*Id.* ¶¶ 42–45). Officer Menon did not answer and repeated his demand to exit the car four times. (*Id.* ¶ 48). Uwah's wife asked Officer Lopez through her passenger-side window why the couple was being stopped as well. (*Id.* ¶ 49). After several more officers arrived and Officer Menon threatened to physically pull Uwah out, Uwah stepped out of the car and to the front of the police car. (*Id.* ¶¶ 53–55).

Officer Menon then grabbed Uwah's arm, twisted it, slammed him into the police car's hood, handcuffed him, and painfully hyperextended his legs. (*Id.* ¶¶ 56–57, 62). Three unidentified officers joined to physically restrain and search Uwah. (*Id.* ¶ 63). No illegal substances or weapons were found on him or in his car. (*Id.* ¶ 64). Uwah was arrested for failure to signal and obstruction. (*Id.* ¶¶ 75–76). The district attorney later "denied the charges." (*Id.* ¶ 81).

Uwah brings claims under 42 U.S.C. § 1983 for unreasonable search and seizure, false arrest, excessive force, violation of equal protection, and retaliation for protected speech.[1] He also brings state law tort claims for negligent training, supervision, and retention and for intentional infliction of emotional distress ("IIED"). Defendants now move to dismiss a subset of Uwah's claims. (ECF No. 6).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires every complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Although Rule 8 does not require detailed factual allegations, it does require more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, a complaint must have *plausible* factual allegations that cover "all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[1] The elements of a claim under 42 U.S.C. § 1983 are "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

562 (2007) (citation omitted) (emphasis in original); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

The Supreme Court in *Iqbal* clarified the two-step approach to evaluate a complaint's legal sufficiency on a Rule 12(b)(6) motion to dismiss. First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678–79. Legal conclusions are not entitled to this assumption of truth. *Id.* Second, the court must consider whether the well-pleaded factual allegations state a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the court can draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. When the allegations have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

## III. DISCUSSION

### A. Official Capacity Claims

Uwah brings various claims against Sheriff Lombardo, Officer Menon, and Officer Lopez in their official capacities. But "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *see also Center for Bio-Ethical Reform, Inc. v. Los Angeles Cnty.*

*Sheriff's Dep't*, 533 F.3d 780, 799 (9th Cir. 1986). Because Uwah brings *Monell* claims against LVMPD, his official capacity claims against the three LVMPD officials are redundant and DISMISSED with prejudice.

### B. Individual Capacity Claims against Sheriff Lombardo

A supervisor can be liable under § 1983 if he was personally involved in a constitutional violation or there is a "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *see also Starr v. Baca*, 652 F.3d 1202, 1205–08 (9th Cir. 2011). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation . . . ; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal alteration and quotation marks omitted).

Uwah's allegations against Sherriff Lombardo do not lead to a reasonable inference that he is personally liable for any constitutional misconduct. Uwah perfunctorily alleges under each claim that LVMPD and Sheriff Lombardo did not "provide adequate training and supervision" and are liable for "their employees' actions because at all relevant times they were responsible for making and enforcing constitutional policies." (ECF No. 1 ¶¶ 93–94, 102–103, 113–114, 124–125, 136–137). There are no facts about Sherriff Lombardo's personal involvement in or causal connection to Uwah's arrest.

And Uwah's opposition to dismissal misses the mark. He maintains that he has adequately alleged Sheriff Lombardo's "involvement as a final policymaker with knowledge and oversight of Metro's unconstitutional policies." (ECF No. 10 at 4; *see also* ECF No. 1 ¶¶ 10–13). Sherriff Lombardo's involvement as a final policymaker would not necessarily expose him to supervisory liability but it could subject LVMPD to municipal liability.[2] *See*

---

[2] To be sure, the term "supervisory liability" is shorthand for the personal liability of officers who just happen to be supervisors. "In a § 1983 suit or a Bivens action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

*generally Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986) (holding that a single decision by a final policymaker can expose a municipality to § 1983 liability under *Monell*). Uwah's claims against Sherriff Lombardo in his individual capacity are DISMISSED with leave to amend.

### C. First Amendment Retaliation Claims

To state a First Amendment retaliation claim, the plaintiff must plausibly allege that "(1) he engaged in constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (quotation omitted). At the pleading stage, the plaintiff must allege merely "plausible circumstances connecting the defendant's retaliatory intent to the suppressive conduct" and motive may be shown by direct or circumstantial evidence. *Id.* at 870. The plaintiff need not allege or prove that his speech was "actually suppressed or inhibited." *Id.* at 867.

"The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers … The freedom of individuals to oppose or challenge police action verbally without thereby risking arrest is one important characteristic by which we distinguish ourselves from a police state." *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990) (internal citations omitted).

Uwah alleges that he engaged in protected speech when "politely question[ed] Officer Menon's authority to detain him and his rationale for said detention." (ECF No. 10 at 6). It cannot be disputed that Uwah's speech occurred *after* he was stopped by LVMPD and allegedly *after* Officer Menon demanded that Uwah exit car and he refused. (ECF No. 1 ¶¶ 45, 60, 128)). Thus, Uwah's allegations that "[b]ut for [Officer Menon's] retaliatory animus, [he] would not have been subjected to arrest for allegedly failing to use his turn signal, nor would [he] have been subjected to arrest for alleged obstruction" are not plausible. (ECF No.

1 ¶¶ 130–131). Uwah's First Amendment retaliation claims are DISMISSED with leave to amend.

### D. Equal Protection Claims

The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff must plausibly allege that a state actor acted with discriminatory intent or purpose because of plaintiff's membership in a protected class or "allege facts that are at least susceptible of an inference of discriminatory intent." *Byrd v. Maricopa Cty. Sherif's Dep't*, 565 F.3d 1205, 1212 (9th Cir. 2009) (quotation omitted), *on reh'g en banc*, 629 F.3d 1135 (9th Cir. 2011).

Uwah alleges that he was driving in a high crime area and used his turn signal at all times. (ECF No. 1 ¶¶ 32–33, 41, 75). According to him, these allegations allow a reasonable inference that his stop and arrest for a purported failure to signal and obstruction was not based on probable cause but based on "racial profiling or racial animus." (ECF No. 10 at 5). The court disagrees. It cannot infer from Uwah's allegations that Officers Menon and Lopez stopped him because he is black. As defendants note, "[t]here are no allegations that the officers knew of [Uwah's] race" when they pulled him over. (ECF No. 13 at 7). Uwah's equal protection claims are DISMISSED with leave to amend.

### E. *Monell* Claims

A local government entity cannot be vicariously liable under § 1983 for "an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, a plaintiff must plausibly allege the "execution of a government's policy or custom" that reflects a deliberate indifference to his constitutional rights was the "moving force" behind his injury. *Id.; see also City of Canton v. Harris*, 489 U.S. 378, 392 (1989). And if the claim is based on an informal practice, it must be of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Thus, municipal liability under *Monell* and its progeny can arise in three ways: (1) commission—when a local official executes an express custom, policy, or practice that causes the injury; (2) omission—when a municipality's oversight amounts to a deliberate indifference to a constitutional right; or (3) ratification—when a final policymaker authorizes or approves of a subordinate's unconstitutional conduct. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016).

Uwah's recounting of various LVMPD lawsuits as part of a "long history of constitutional violations" (ECF No. 10 at 8) has little to do with his precise alleged constitutional injury—a vehicle stop made without probable cause that ended in an arrest made with excessive force. (*See* ECF No. 1 ¶¶ 22–28). For example, Uwah recounts litigation over LVMPD's detention of street performers on the Strip. (*Id.* ¶ 28). Uwah's contention that such "past incidents raise the inference that Metro has unlawful practices or policies of making seizures and arrests without probable cause" is far from what he must do at this pleading stage: identify a *specific* LVMPD policy that caused his unconstitutional stop and arrest. (ECF No. 10 at 2). While an officer's alleged statements to Uwah describing how LVMPD's gang unit "do some stuff different" in high crime areas are more helpful, these allegations alone fall short of a well-pleaded *Monell* claim. (*Id.* ¶¶ 69–70). Uwah's *Monell* claims are DISMISSED with leave to amend.

**F. State Law Tort Claims**

A person with a tort claim against a Nevada political subdivision must file his claim within two years of accrual with the governing body of that political subdivision. Nev. Rev. Stat. § 41.036(2). The purpose of this claims-notice statute is to prevent surprise. *State by Welfare Div. of Dept. of Health, Welfare and Rehabilitation v. Capital Convalescent Ctr.*, 547 P.2d 677, 152 (Nev. 1976).

Uwah concedes that his negligent training, retention, and supervision claim against LVMPD should be dismissed under Nevada's claims-notice statute. (ECF No. 10 at 2). His encounter with LVMPD officers occurred on September 24, 2018 yet LVMPD first received

James C. Mahan
U.S. District Judge

notice of his state law tort claims when it was served with the instant complaint on December 9, 2020. (ECF No. 6 at 15).

Uwah incorrectly maintains that his IIED claim against Officer Menon in his individual capacity should proceed. (ECF No. 10 at 9). Because he does not allege that Officer Menon acted outside the scope of his employment—nor can he plausibly do so—his failure to name LVMPD as a defendant to the IIED claim is grounds for dismissal under NRS 41.0337.[3] But on top of omitting an indispensable defendant, to bring an IIED claim against LVMPD, Uwah had to notify it of the claim within two years of accrual under NRS 41.036(2). As discussed above, Uwah notified LVMPD of his state law tort claims via the instant complaint after the two-year period. Thus, both his IIED and negligent training, supervision, and retention state law tort claims are DISMISSED with prejudice.

## IV. CONCLUSION

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for partial dismissal (ECF No. 6) be, and the same hereby is, GRANTED. Uwah's claims against LVMPD officials in their official capacities and his two state law tort claims are DISMISSED with prejudice. The remaining claims discussed herein are DISMISSED with leave to amend.

. . .

. . .

. . .

. . .

. . .

---

[3] NRS 41.0337 states that "[n]o tort action arising out of an act or omission within the scope of a person's public duties or employment may be brought against any present or former . . . Officer or employee of the State or of any political subdivision . . . unless the State or appropriate political subdivision is named a party defendant under NRS 41.031." Nev. Rev. Stat. § 41.0337; *see also Craig v. Donnelly*, 439 P.3d 413, 416 (Nev. App. 2019) ("Any state tort claims must name not only the state employees, but must also include the State, on relation of the particular department, as a party to those particular claims in order to comply with NRS 41.031 and NRS 41.0337 and perfect a waiver of Nevada's sovereign immunity.").

**James C. Mahan**
**U.S. District Judge**

- 8 -

1    IT IS FURTHER ORDERED that Uwah may filed an amended complaint within 21 days of this order. Failure to do so will result in dismissal of the claims discussed herein with prejudice.

DATED June 18, 2021.

_____
UNITED STATES DISTRICT JUDGE