UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARTIN SUNDAY UWAH,<br><br>Plaintiff(s),<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al.,<br><br>Defendant(s). | Case No. 2:20-CV-1773 JCM (NJK)<br><br>ORDER |

Presently before the court is defendants Las Vegas Metropolitan Police Department ("LVMPD"), Joseph Lombardo ("Lombardo"), Kevin Menon ("Menon"), and Ricardo Lopez ("Lopez") (collectively "defendants")'s motion for summary judgment (ECF No. 59). Plaintiff Martin Uwah ("plaintiff") filed a response (ECF No. 74), to which defendants replied (ECF No. 82).

Also before the court is plaintiff's motion for leave to file excess pages. (ECF No. 60). Defendants did not file a response to plaintiff's motion.

**I.    Background**

This action arises from an interaction between plaintiff and LVMPD officers on the evening of September 24, 2018. (ECF No. 25 at 4-5). At around 9:00 p.m., plaintiff and his wife were driving back to their hotel from dinner in an area slightly north of the University of Las Vegas, Nevada campus. (*Id.* at 4). LVMPD has designated the vicinity in which plaintiff was

**James C. Mahan**
**U.S. District Judge**

driving as a "high crime" area. (*Id.* at 5). Plaintiff's GPS instructed him to make a U-turn on a street where Menon and Lopez stationed their vehicle. (*Id.*).

After spotting the officers' marked police car and viewing them through his non-tinted windows, plaintiff allegedly signaled and turned into a parking lot to avoid making an illegal U-turn and to re-read the directions to the hotel. *(Id.)*.

Upon plaintiff's turning into the parking lot, Menon enabled his police sirens and implemented his vehicle-mounted flood light to illuminate the interior of plaintiff's vehicle. (*Id.* at 6). Subsequently, Menon approached plaintiff's car, asked him to roll down the driver-side window, and then told him to exit the vehicle. (*Id.*). Plaintiff refused to heed Menon's instructions and inquired about the reason for the stop. (*Id.* at 7). Menon did not answer and repeatedly demanded that plaintiff exit the vehicle and keep his hands in plain sight. (*Id.*).

Meanwhile, through her passenger-side window, plaintiff's wife asked Lopez why the officers stopped her husband. (*Id.* at 8). Lopez did not directly answer her, instead stating "we'll let [plaintiff] know when he steps out." (*Id.*). After several more officers arrived on scene and Menon threated to physically remove plaintiff from his vehicle, plaintiff finally exited the car, adhering to Menon's demand that he approach the front of the police vehicle. (*Id.*).

Menon then grabbed plaintiff's arm, twisted it, slammed his face into the hood of the police car, handcuffed him, placed him in a chokehold, and forced him to extend his legs to a painful position. (*Id.* at 8-9). Three unidentified officers helped physically restrain and search plaintiff. (*Id.* at 9). At no point did the officers find any illegal substance or weapons on plaintiff or his vehicle. (*Id.*). The officers arrested plaintiff for failure to signal and obstruction of justice. (*Id.* at 10). However, the district attorney later "denied the charges." (*Id.*).

**James C. Mahan**
**U.S. District Judge**

Plaintiff now brings claims under 42 U.S.C. § 1983 for unreasonable search and seizure, false arrest, excessive force, equal protection, and retaliation for protected speech. (*Id.* at 15-25).[1] The court issued an order on defendants' motion for partial dismissal of plaintiff's amended complaint, in which it granted, in part, and denied, in part, the motion. (ECF No. 47). Accordingly, defendants request the court grant summary judgment on the remaining causes of action: (i) unreasonable search and seizure against Menon and Lopez; (ii) unreasonable search and seizure against LVMPD; (iii) false arrest against Menon and Lopez; (iv) false arrest against LVMPD; (v) excessive force against Menon and Lopez; (vi) equal protection against Menon, and (vi) retaliation for protected speech against Menon.[2]

## II.     Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990). However, to

---

[1] Plaintiff alleges the claims for unreasonable search and seizure, false arrest, and excessive force twice, once against Menon and Lopez individually and once against LVMPD and Lombardo in his official capacity. Plaintiff alleges the claims of equal protection and retaliation for protected speech against Menon individually, LVMPD, and Lombardo in his official capacity.

[2] These claims correspond to the first, second, third, fourth, fifth, seventh, and ninth causes of actions in plaintiff's amended complaint, respectively. (ECF No. 25).

**James C. Mahan**
**U.S. District Judge**

- 3 -

be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001)) ("[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56.").

**III.   Discussion**

A.   Motion for leave to file excess pages

As an initial matter, the court must first address plaintiff's motion for leave to file excess pages (ECF No. 60). Plaintiff requested leave to file a response to defendants' motion for summary judgment (ECF No. 59) that exceeded the thirty-page limited dictated by Local Rule 7-

**James C. Mahan**
**U.S. District Judge**

- 5 -

3. *Id.* at 2; *see* LR 7-3(a) ("[m]otions for summary judgment and responses to motions for summary judgment are limited to 30 pages, excluding exhibits.").

Local Rule 7-3 states that a response to a motion for summary judgment shall not exceed thirty pages. LR 7-3(a). The court has the authority to relax or modify this rule only upon a showing of good cause. LR 7-3(c); *Veterinary Ventures, Inc. v. Farris*, No. 3:09-cv-00732-RCJ-VPC, 2010 WL 3070423, at \*2 (D. Nev. Aug. 3, 2010) (citing *Gennock v. Warner-Lambert Co.*, 208 F. Supp. 2d 1156, 1158 (D. Nev. 2022)).

Plaintiff notes that this is a fact-intensive matter involving sophisticated issues of constitutional magnitude, and that "due to the complexity of [plaintiff's] claims, the dense and numerous factual allegations in this case," plaintiff seeks leave to file a response forty pages in length. (ECF No. 60 at 2).

The court agrees that the breadth of the issues involved in this action warrant an exception to the general thirty-page limit. Good cause appearing, the court grants plaintiff's motion for leave to file excess pages. (ECF No. 60).

B. Qualified immunity

Additionally, the court has to consider whether defendants can assert the privilege of qualified immunity. As discussed *infra*, defendants fail to plead a defense of qualified immunity sufficient for the court to afford them the doctrine's requisite protection.

Qualified immunity insulates public officials "from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is broad, protecting "all but the

plainly incompetent or those who knowingly violate the law." *Lee v. Gregory*, 363 F.3d 931, 934 (9th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Determining whether a defendant is entitled to qualified immunity in a § 1983 action entails a two-part, conjunctive analysis exercised in the order the court deems appropriate. First, a court must consider whether the defendant's actions violated a constitutional right. *Conn v. City of Reno*, 572 F.3d 1047, 1062 (9th Cir. 2009). In making this inquiry, the court views facts in the light most favorable to the party asserting the injury. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

Second, the court must determine whether the constitutional right was clearly established. *Conn*, 572 F.3d at 1062. A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 1062 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). In making this inquiry, the court should consider "the specific context of the case" and not "broad general proposition[s]." *Saucier*, 533 U.S. at 201. It is the plaintiff's burden to show that the constitutional right was clearly established. *Sorrels*, 290 F.3d at 969.

When a plaintiff asserts a § 1983 cause of action against a government official in his individual capacity, the government official may raise the affirmative defense of qualified immunity. *See Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005).

Here, defendants have asserted this defense. However, defendants' discussion of qualified immunity merely encompasses three pages of defining the legal standard of this doctrine. (ECF No. 59 at 11-14). Defendants fail to establish a nexus between the facts of the instant matter and the validity of a qualified immunity defense. While defendants cite proper law on this issue, they offer neither analysis of the law nor its application to the present facts. (*Id.*).

James C. Mahan
U.S. District Judge

- 7 -

Instead, defendants wait until their reply to contend that plaintiff did not adequately distinguish the cases cited in defendants' motion, thereby affording them qualified immunity. (ECF No. 82 at 14).

The court cannot rule that qualified immunity applies when defendants merely cite a surfeit of cases juxtaposed with a dearth of factual explanation. Defendants now task the court with determining whether the officers knew their actions were unlawful and acted reasonably when defendants themselves fail to proffer any evidence on the issue. The court refuses to engage in such a practice. *See Couturier v. Am. Invsco Corp.*, No. 2:12-cv-01104-APG-NJK, 2013 WL 4499008, at *3 (D. Nev. Aug. 20, 2013) ("[a] judge is the impartial umpire of legal battles, not a party's attorney. He is neither required to hunt down arguments the parties keep camouflaged, nor required to address perfunctory and undeveloped arguments."). Given the insufficiency of defendants' pleading, the court rules that qualified immunity does not apply, and it now must analyze each cause of action in turn.

C. Unreasonable search and seizure

Defendants first move for summary judgment on plaintiff's two claims for unreasonable search and seizure. There are two main points of contention: (i) the vehicle search and (ii) the initiation of the traffic stop. Plaintiff asserts causes of action against Menon and Lopez as well as a *Monell* claim against LVMPD.

i. *Search of plaintiff's vehicle*

1. *Actions of defendants Menon and Lopez*

Plaintiff alleges that the search of his vehicle by Menon and Lopez did not comport with the Fourth Amendment prohibition against unreasonable searches and seizures. (ECF No. 74 at 25-26). The search of the passenger compartment of an automobile, limited to those areas in

which a weapon may be placed or hidden, is permissible if the police officer possesses reasonable suspicion based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. *Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

Articulating precisely what "reasonable suspicion" means is not possible. *Ornelas v. United States*, 517 U.S. 690, 695 (1996). The Supreme Court has described reasonable suspicion simply as "a particularized and objective basis" for suspecting the person stopped of criminal activity. *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). The legal principle of reasonable suspicion, just like that of probable cause, is not a finely tuned standard, comparable to the standards of proof beyond a reasonable doubt or of proof by a preponderance of the evidence. *Illinois v. Gates*, 462 U.S. 213, 235 (1983). It is instead a fluid concept that takes its substantive content from the particular contexts in which the standard is being assessed. *Id.* at 232.

Menon and Lopez had reasonable suspicion to order a search of plaintiff's vehicle. As defendants posit, a location's characteristics are relevant in determining whether the circumstances are sufficiently suspicious. (ECF No. 59 at 13); *see Adams v. Williams*, 407 U.S. 143, 147-48 (1972). Menon testified that the intersection of Twain and Swenson, the location where defendants observed plaintiff's vehicle, is a violent section of the city. (ECF No. 59-2 at 36). Furthermore, before defendants pulled over plaintiff, plaintiff parked his vehicle at a particular 7-11 which is a "known narcotics hot spot" to LVMPD officials. (*Id.*). Moreover, Menon testified that in his experience working for LVMPD, rental cars are often used to move narcotics. (*Id.* at 50).

James C. Mahan
U.S. District Judge

- 9 -

Menon's body camera shows footage that supports defendants' contention that plaintiff exited his vehicle only after Menon issued his thirteenth command to him. (ECF No. 59-3 at 02:25-02:30). While defendants do not cite the specific portion of the video where plaintiff opens and closes his door before adhering to Menon's thirteenth command, the footage is consistent with the allegation. (*Id.* at 02:02-02:05).

Such an action constitutes a furtive movement that would engender reasonable suspicion. *See United States v. McCall*, 268 F. App'x 646, 647 (9th Cir. 2008) (holding that the officer had reasonable suspicion based on furtive movement in the suspect's vehicle). The opening and closing of the car door combined with the late hour and darkness of the location supports a finding of reasonable suspicion and a constitutional search of plaintiff's vehicle.

### 2. *Monell claim with respect to vehicle search*

Plaintiff asserts a *Monell* claim against LVMPD, arguing that it has a policy of unconstitutional searches of vehicles. (ECF No. 74 at 26-27). The principal framework governing municipal liability in § 1983 actions against municipalities was established in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, municipal liability must be based upon the enforcement of a municipal policy or custom, not upon the mere employment of a constitutional tortfeasor. *Id.* at 691. Therefore, for liability to attach, four conditions must be satisfied: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996).

"To prevent municipal liability . . . from collapsing into *respondeat superior* liability, federal courts must apply 'rigorous standards of culpability and causation' in order to 'ensure

James C. Mahan
U.S. District Judge

- 10 -

1    that the municipality is not held liable solely for the actions of its employees.'" *Board of Cnty.*
2    *Comm. of Bryan City v. Brown*, 520 U.S. 397, 405, 410 (1997).  Thus, a municipality will only
3    be liable when the "execution of a government's policy or custom . . . inflicts the injury . . . ."
4    *Monell*, 463 U.S. at 694.
5
6         To show a policy, the plaintiff must identify "a deliberate choice to follow a course of
7    action . . . made from among various alternatives by the official or officials responsible for
8    establishing final policy with respect to the subject matter in question."  *Fairley v. Luman*, 281
9    F.3d 913, 918 (9th Cir. 2002) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992))
10   (internal quotation marks omitted).
11
12        "Proof of random acts or isolated events" does not fit within *Monell*'s meaning of
13   custom.  *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989) (overruled on
14   other grounds); *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010).  Indeed,
15   "[o]nly if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice
16   may liability attach for injury resulting from a local government custom."  *Id.* (quoting *City of St.*
17   *Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes*, 398 U.S. at 168 (1970))).
18
19        Moreover, a plaintiff must allege a specific municipal policy to sustain a § 1983 claim.
20   *See, e.g., Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).  The Ninth Circuit has held that a
21   plaintiff must also prove that the municipality could have prevented the violation with an
22   appropriate policy.  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 1992).
23
24        Plaintiff does not meet the burden to sustain a *Monell* claim regarding the search of his
25   vehicle.  Plaintiff has the burden of showing that the vehicle search was not an isolated event, but
26   he fails to do so.  One reason defendants searched the vehicle was because plaintiff's wife would
27   be driving the car after her husband's arrest, and defendants needed to ensure no weapons were
28

James C. Mahan
U.S. District Judge

- 11 -

in the vehicle.  (ECF No. 59 at 6).  Plaintiff does not point out any other instance similar to the instant matter where officers searched a vehicle prior to turning it over to the custody of a passenger.

Plaintiff fails to show that any alleged injury caused by LVMPD resulted from a permanent and well-settled practice, instead citing an inapposite, unreported case where the court *did not* find that the officers violated any of the defendant's constitutional rights.  (ECF No. 74 at 26-27) (emphasis added); *see generally United States v. Phillips*, No 2:18-00228-RCJ-VCF, 2019 WL 2224846 (D. Nev. April 29, 2019).  Plaintiff fails to establish a legitimate *Monell* claim with respect to the vehicle search.

> ii. *Traffic stop*
>
>> i. *Actions of defendants Menon and Lopez*

The second issue in plaintiff's cause of action for unreasonable search and seizure against Menon and Lopez regards the traffic stop.  The Fourth Amendment requires traffic stops to be based on reasonable suspicion grounded in "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the person is engaging in criminal activity."  *Kansas v. Glover*, 140 S. Ct. 1183, 1187-88 (2020) (citing *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2020)).  Traffic violations may constitute reasonable suspicion in the mind of a police officer.  *United States v. Choudhry*, 461 F.3d 1097, 1098 (9th Cir. 2006).

Menon and Lopez did not contravene the Fourth or Fourteenth Amendments to the Constitution when initiating the traffic stop.  The body camera footage is undisputed evidence that plaintiff's vehicle was drifting into the median without plaintiff implementing his turn signal.  (ECF No. 59-3 at 00:28-00:36); *see Scott v. Harris*, 550 U.S. 372 (2007) (holding that

when a genuine issue of fact exists based on a "visible fiction," the court should view the facts in the light depicted in the videotape, if available).

In Nevada, a vehicle must use a turn signal not less than 100-feet prior to changing its course. NRS 484B.413. Violation of that statute would cause reasonable suspicion sufficient to initiate a traffic stop. The actions of Menon and Lopez relating to the traffic stop of plaintiff were proper and in accordance with the Constitution. There is no genuine issue of material fact—the search of plaintiff's vehicle and the traffic stop were both proper. The court grants defendants' motion for summary judgment as to plaintiff's claim for unreasonable search and seizure against Menon and Lopez.

*ii. Monell claim with respect to traffic stop*

The *Monell* claim asserted by plaintiff relating to the traffic stop fails for the same reasons as it did *supra*. The case cited by plaintiff, while emanating from this court, is not analogous to the case at hand. (ECF No. 74 at 31-32). In that case, the court relied on testimony from officers to show that a traffic stop was pretextual. *See generally United States v. Moore*, No. 2:19-cr-00171-JCM-VCF (D. Nev. April 13, 2020).[3] There is no genuine issue of material fact—plaintiff has pleaded his *Monell* claims inadequately. The court grants defendants' motion for summary judgment as to plaintiff's *Monell* claims for unreasonable search and seizure against LVMPD.

D. False arrest

Defendants move for summary judgment on plaintiff's two claims for false arrest. Plaintiff asserts causes of action against Menon and Lopez as well as a *Monell* claim against LVMPD.

---

[3] There is no Westlaw citation available for this case.

James C. Mahan
U.S. District Judge

- 13 -

### 1. *Actions of defendants Menon and Lopez*

Plaintiff sets forth a false arrest claim against Menon and Lopez, alleging that the officers violated his right to be free from false arrest by arresting him for failure to use his traffic signal and for obstruction of justice despite lacking probable cause. (ECF No. 25 at 17).[4] The question of whether probable cause existed to justify a search or an arrest is a legal question that should be determined by the district court at the earliest possible point in the litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Plaintiff disputes the validity of his arrest for obstruction of justice but offers no facts to refute the claims that he exited his vehicle only after hearing thirteen distinct commands from Menon. (ECF No. 59 at 5). Plaintiff avers that LVMPD policy does not permit an arrest for a misdemeanor crime unless certain circumstances are present, such as the crime being for DUI or domestic violence, the arrestee refusing to sign a citation, the arrestee demanding an immediate appearance before a magistrate judge, and the arrestee having an outstanding felony warrant. (ECF No. 74 at 33). Based on the current record, the court finds this argument unpersuasive.

Nevada law provides that an arrest for a misdemeanor, including obstruction, is permissible "when the offense is committed in the presence of the arresting officer." Nev. Rev. Stat. § 171.136. Here, plaintiff ignored Menon's commands to exit his vehicle while plaintiff was directly in front of him. (ECF No. 59-3 at 01:00-02:30). Also, plaintiff opens and closes his car door before adhering to Menon's thirteenth command, as shown by the body camera footage. (*Id.* at 02:02-02:05).

Menon's body camera footage also shows plaintiff uttering the phrase "for what?" after Menon directs him to approach the front of the patrol car. (*Id.* at 02:30-02:36). The totality of

---

[4] Defendants arrested plaintiff for obstruction of justice, not for failure to stop. Accordingly, the court will analyze the obstruction of justice offense only.

the circumstances demonstrates that probable cause existed to arrest plaintiff for obstruction of justice. Plaintiff's response brief does not even allude to the obstruction of justice statute. There is no genuine issue of material fact—Menon and Lopez had probable cause to arrest plaintiff. The court grants defendants' motion for summary judgment as to plaintiff's claim for false arrest against Menon and Lopez.

### 2. *Monell claim with respect to false arrest*

Again, plaintiff asserts a *Monell* claim against LVMPD, this time for the alleged false arrest of plaintiff. (ECF No. 25 at 18). Plaintiff does not cite a single case where officers arrested an individual for obstruction of justice. Plaintiff also fails to prove that LVMPD could have prevented the violation with a more appropriate policy. *See Tsao*, 698 F.3d at 1143. There is no genuine issue of material fact—plaintiff has pleaded his *Monell* claim inadequately. The court grants defendants' motion for summary judgment as to plaintiff's *Monell* claim for false arrest against LVMPD.

### E. Excessive force

Defendants move for summary judgment on plaintiff's claim for excessive force against Menon and Lopez. A claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure" is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Conor*, 490 U.S. 386, 394 (1989); *see also Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

In determining whether an officer's use of force is reasonable, courts look at "(1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Mattos v. Agarano*, 661 F.3d 433, 411 (9th Cir. 2011). The reasonableness

James C. Mahan
U.S. District Judge

- 15 -

inquiry in excessive force cases is an objective one: whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation and without the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

As stated in the unlawful arrest analysis, Menon and Lopez executed an arrest based on probable cause that plaintiff was obstructing justice. "Some degree of physical coercion or threat" to effectuate an arrest is lawful so long as it is "reasonable." *See id.* at 396. The primary issue surrounding this claim of excessive force is whether Menon and Lopez's actions were in fact reasonable.

Plaintiff alleges that as he attempted to approach the front of the patrol car, Menon grabbed his arm, twisted it behind his back, slammed him face-first onto the hood of the vehicle, and placed handcuffs on him. (ECF No. 25 at 8). In his amended complaint, Plaintiff states that Menon put him in a chokehold while arresting him. (*Id.*).

Defendants counter these claims by positing that plaintiff actively resisted arrest by spinning counterclockwise away from the vehicle, resulting in Lopez grabbing plaintiff's left arm. (ECF No. 59 at 6). Although plaintiff moved his arm back, Menon allegedly told plaintiff to relax and calm down so that he could effectuate the arrest. (*Id.*). Defendants posit that because of plaintiff's resistance, Menon attempted to "stabilize" his hold of plaintiff, but at no point did he utilize a choke or vascular neck restraint on him. (*Id.*).

Defendants concede that the first factor in the court's analysis, the severity of the crime, weighs in favor of plaintiff. (ECF No. 82 at 12). Consequently, the crucial question is whether Menon and Lopez were objectively reasonable in effectuating plaintiff's arrest. The body camera footage shows that the order of events is material, but disputed.

The court finds that that a reasonable jury could determine, viewing the facts in a light most favorable to plaintiff, that the use of force was objectively unreasonable. Thus, a genuine issue of material fact exists as to plaintiff's claim for excessive force. Therefore, the court denies defendants' motion for summary judgment on this count of plaintiff's amended complaint.

F. Equal protection

Defendants request the court to enter summary judgment on plaintiff's claim for equal protection against Menon. To maintain a claim for relief based on equal protection, a plaintiff must allege that the defendant state actor acted at least in part because of plaintiff's membership in a protected class. *Serrano v. Francis*, 345 F.3d 1071, 1081-82 (9th Cir. 2003). "To prevail on an Equal Protection claim brought under § 1983, [a plaintiff] must allege facts plausibly showing that the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Hartmann v. Cal. Dep't of Corrs. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citations and internal quotation marks omitted).

Plaintiff asserts that Menon subjected him to an unlawful search, seizure, false arrest, and excessive force based on plaintiff's race. (ECF No. 25 at 21). Plaintiff's claim fails as a matter of law. Menon testified that he did not know plaintiff's race *before* initiating the traffic stop. (ECF No. 59-2 at 34) (emphasis added). In his response, plaintiff states that Menon's discriminatory enforcement and purpose can be inferred because he observed plaintiff, a black man, in a "high crime" area. (ECF No. 74 at 40). Inferences are not sufficient to survive a motion for summary judgment.

Plaintiff ignores that Menon observed him only *after* he initiated the traffic stop. Plaintiff argues that Menon abandoned normal protocols for traffic stops because of plaintiff's race, but he offers no evidence as to how Menon deviated from any such protocols. (*Id.* at 40-41). There is

**James C. Mahan**
**U.S. District Judge**

- 17 -

no genuine issue of material fact—Menon did not know plaintiff's race before pulling him over. The court grants defendants' motion for summary judgment as to plaintiff's claim for equal protection against Menon.

G. Retaliation for protected speech

Defendants move for summary judgment on plaintiff's claim for retaliation for protected speech against Menon. To succeed on a First Amendment retaliation claim, a plaintiff must allege that: (1) he engaged in constitutionally protected activity; (2) the defendant's actions would "chill a person of ordinary firmness" from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct. *Ariz. Students' Ass'n v. Ariz. Board of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).

Plaintiff avers that Menon retaliated against him after he asked why he was being detained. (ECF No. 25 at 23). In a First Amendment retaliation claim, a plaintiff must plead and prove the absence of probable cause. *Nieves v. Bartlett*, 139 S. Ct 1715, 1723 (2019). The court has already stated that Menon and Lopez had probable cause in pulling over plaintiff, as the video evidence shows him clearly deviating into the median without implementing his turn signal. (ECF No. 59-3 at 00:28-00:36).

Assuming, *arguendo*, that a question of probable cause exists for the jury, plaintiff's retaliation claim still fails, as his speech was not "protected speech." Protected speech is "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments," meaning that "[a]n intent to convey a particularized message [is] present." *Spence v. Washington*, 418 U.S. 405, 409-11 (1974).

Here, plaintiff was merely asking Menon about the reason for the stop. (ECF No. 59-3 at 02:24-02:30). Such speech is not afforded First Amendment protection. There is no genuine

James C. Mahan
U.S. District Judge

- 18 -

issue of material fact—Menon did not retaliate against plaintiff for protected speech. The court grants defendants' motion for summary judgment as to plaintiff's claim for retaliation for protected speech against Menon.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF No. 59) be, and the same hereby is, GRANTED as to counts I, II, III, IV, VII and IX of plaintiff's amended complaint (ECF No. 25).

IT IS FURTHER ORDERED that defendants' motion for summary judgment (ECF No. 59) be, and the same hereby is, DENIED as to count V of plaintiffs' amended complaint (ECF No. 25).

IT IS FURTHER ORDERED that plaintiff's motion for leave to file excess pages (ECF No. 60) be, and the same hereby is, GRANTED.

DATED August 30, 2023.

_____
UNITED STATES DISTRICT JUDGE